U.S. DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**FILED**

APR 2 6 2017

IN OPEN COURT
JAMES W. McCORMACK, CLERK
BY:_____
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA    )
        )
v.        )    No. 4:17CR00080-1 JM
        )
PEGGY KENDRICK    )

## PLEA AGREEMENT

The Acting United States Attorney for the Eastern District of Arkansas, Patrick C. Harris, by and through Julie Peters, Assistant United States Attorney; the Acting Assistant Attorney General for the Civil Rights Division of the Department of Justice, Thomas Wheeler, by and through Samantha Trepel, Trial Attorney (hereinafter "the United States"); and PEGGY KENDRICK, defendant, represented by the undersigned counsel, hereby agree to the following terms and conditions in connection with the above referenced proceedings.

1.    **GUILTY PLEA:** The defendant will waive indictment and permit the United States to proceed by Information charging the defendant in Count One with conspiring against rights, a violation of Title 18 United States Code, Section 241; in Count Two with deprivation of rights under color of law, a violation of 18 United States Code, Section 242; and in Count Three with obstruction of justice, a violation of 18 United States Code, Section 1519. The defendant also agrees to enter a plea of guilty to the Information. This is a Federal Rule of Criminal Procedure 11(c)(1)(A) plea agreement.

2.    **ELEMENTS OF THE CRIME:** The parties agree the elements of the offense to which the defendant will plead guilty are:

As to Count One:

1

A.      Between October and November 2013, within the Eastern District of Arkansas, and while acting under color of law;

B.      the defendant conspired and agreed with other correctional officers at the White River Juvenile Detention Center;

C.      the purpose of the conspiracy was to violate the rights of juveniles at the White River Juvenile Detention Center of their Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment and from their right not to be deprived of liberty without due process of law; and

D.      the defendant willfully joined the conspiracy.

As to Count Two:

A.      On or about October 14, 2013, in the Eastern District of Arkansas, and while acting under color of law;

B.      The defendant deprived E.L. of her right not to be deprived of liberty without due process of law;

C.      The defendant did so willfully; and

D.      The defendant's actions resulted in bodily injury to E.L.

As to Count Three:

A.      On or about October 14, 2013, in the Eastern District of Arkansas, and while acting in relation to and in contemplation of a matter within the jurisdiction of an agency of the United States;

B.      The defendant knowingly altered, concealed, covered up, falsified, or made false entries in a record or document; and

C.    The defendant did so with the intent to impede, obstruct, or influence the investigation and proper administration of that matter.

The defendant agrees that she is guilty of the offenses charged and each of these elements is true.

3.    **PENALTIES:**

A.    <u>STATUTORY PENALTIES:</u>   The penalty for the charge set forth in Count One is not more than ten years imprisonment, a fine of not more than $250,000, not more than three years supervised release, and a $100 special assessment.   The penalty for the charge set forth in Count Two is not more than ten years imprisonment, a fine of not more than $250,000, not more than three years supervised release, and a $100 special assessment.   The penalty for the charge set forth in Count Three is not more than twenty years imprisonment, a fine of not more than $250,000, not more than three years supervised release, and a $100 special assessment.

B.    <u>SUPERVISED RELEASE:</u>   Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.   The defendant understands that if the defendant violates one or more of the conditions of any supervised release imposed, the defendant may be returned to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum stated above.

4.    **WAIVERS:**   The defendant acknowledges that she has been advised of and fully understands the nature of the charges to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.   The defendant further understands that by entering into this Agreement and Addendum, she is waiving certain constitutional rights, including, without limitation, the following:

A.     The right to appeal or collaterally attack, to the full extent of the law, the conviction and sentence imposed, including any forfeiture or restitution order, as follows:

(1)     the defendant waives the right to appeal the conviction and sentence directly under Title 28, United States Code, Section 1291 and/or Title 18, United States Code, Section § 3742(a), including any issues that relate to the establishment of the Guideline range, except that the defendant reserves the right to appeal claims of prosecutorial misconduct and the defendant reserves the right to appeal the sentence if the sentence imposed is above the Guideline range that is established at sentencing;

(2)     the defendant expressly acknowledges and agrees that the United States reserves its right to appeal the defendant's sentence under Title 18, United States Code, Section 3742(b) and *United States v. Booker*, 543 U.S. 220 (2005);

(3)     the defendant waives the right to collaterally attack the conviction and sentence pursuant to Title 28, United States Code, Section 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct;

(4)     the defendant waives the right to have the sentence modified pursuant to Title 18, United States Code, Section 3582(c)(2);

(5)     the defendant waives the right to appeal the Court's determination of the amount of restitution and subsequent restitution order, if any; and

(6)     the defendant waives the right to appeal the Court's determination of any forfeiture issues and subsequent forfeiture order, if any.

B.     The right to plead not guilty or to persist in that plea if it has already been made, and the right to a speedy and public trial before a jury;

4

C.    The right to be presumed innocent and to have the burden of proof placed on the United States to establish guilt beyond a reasonable doubt;

D.    The right to confront and cross examine witnesses;

E.    The right to testify in her own behalf if the defendant so chooses, or, the right to remain silent and not be compelled to testify, and to have that choice not used against the defendant;

F.    The right to call witnesses and to require those witnesses to appear by issuing subpoenas.

G.    Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), the defendant understands that upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

5.    **STIPULATIONS:**   The United States and the defendant stipulate to the following:

A.    As to Count One, the parties agree that the base offense level is calculated pursuant to U.S.S.G. § 2H1.1, which provides that the base offense level should be determined by applying the offense level from the offense guideline applicable to any underlying offense, if the underlying offense level is greater than 12.   The parties agree that the applicable underlying offense guidelines are Section 2A2.3(a)(1), which provides for a base level of 7, and Section 2J1.2, which provides for a base offense level of 14.   Because 7 is less than 12, the defendant's base offense level for the underlying assault offenses is 12.

B.      The parties agree that the defendant's base offense level for the assault conduct should be increased by 6 levels pursuant to Section 2H.1(b)(1) because the defendant committed the offense under color of law.   This results in an offense level of 18.

C.      The parties agree that the base offense level for the underlying offense conduct calculated pursuant to Section 2H1.1 should be increased by 2 levels pursuant to 3A1.1(b)(1) because the victims were vulnerable, and increased by 4 levels purusuant to Section 3B1.1(a) because the defendant was an organizer or leader.   The parties agree that this increases the defendant's offense level for the Section 2H1.1 underlying assault offenses from 18 to 24.

D.      Additionally, Section 1B1.2 provides that a count charging conspiracy to commit more than one offense shall be treated as if the defendant has been convicted on a separate count of conspiracy for each offense the defendant conspired to commit.   The parties agree that pursuant to Section 1B1.2, the offense level for the conspiracy count is calculated as if the defendant committed four assaults pursuant to Section 2H1.1, each with an offense level of 24, and two counts of obstruction of justice pursuant to Section 2J1.2, with an offense level of 14.   The parties agree that pursuant to Section 3D1.4, the combined offense level is 28.

E.      As to Count Two, the parties agree that the base offense level is calculated pursuant to U.S.S.G. § 2H1.1, which provides that the base offense level should be determined by applying the offense level from the offense guideline applicable to any underlying offense, if the underlying offense level is greater than 12.   The parties agree that the applicable underlying offense guidelines are Section 2A2.3(a)(1), which provides for a base level of 7.   Because 7 is less than 12, the defendant's base offense level for the underlying assault conduct is 12.

F.      The parties agree that the base offense level should be increased by 2 levels pursuant to 3A1.1(b)(1) because the victims were vulnerable; increased by 4 levels

6

purusuant to Section 3B1.1(a) because the defendant was an organizer or leader; and increased by 6 levels pursuant to Section 2H.1(b)(1) because the defendant committed the offense under color of law.   The parties agree that this increases the defendant's offense level to 24.

G.      As to Count Three, the parties agree that the base offense level is calculated pursuant to Section 2J1.2, which provides for a base offense level of 14.

H.      The defendant is eligible for a 2 point reduction for acceptance of responsibility unless the defendant takes any action between the entry of the guilty plea and imposition of the sentence that is inconsistent with acceptance of responsibility.   If the offense level is 16 or greater, the determination of whether the defendant is eligible for a third point reduction for acceptance of responsibility will be made by the United States at the time of sentencing.

I.      The parties stipulate that no other enhancements or reductions under Chapter 2, Chapter 3, or Chapter 5 of the Guidelines apply, other than those specifically set out in this agreement and its addendum.

J.      The defendant specifically waives any and all challenges to the searches, seizures, arrests, statements, and forfeitures that have taken place as of the date of the execution of this plea agreement by the defendant in this investigation by any entity, and in any forum where the offense may be pursued and/or forfeiture may be sought.   Defendant will assist in executing any requested waiver of challenge and relinquishment of rights to any and all assets that have been seized to date in this investigation by any participating agency or department, in any forum where the forfeiture may be sought.

K.      The defendant stipulates that the following facts are true:

Between June 2012 and July 2014, the defendant, Peggy Kendrick, served as the Captain
of the White River Juvenile Detention Center ("White River"), which is located in the Eastern
District of Arkansas.   One of her lieutenants was Dennis Fuller.   Kendrick, Fuller, and other
correctional officers at White River conspired to, and frequently did, use force without
justification to assault, injure, and physically punish juvenile inmates being held at White River.
Kendrick, Fuller, and other correctional officers specifically assaulted, injured, and physically
punished juvenile inmates by spraying them with oleoresin capsicum, or pepper, spray when they
were compliant, not physically resisting, and posing no threat.   Kendrick, Fuller, and other
correctional officers then unjustifiably shut compliant and unresisting juvneiles in their cells after
spraying them in order to "let them cook," or to continue suffering the effects of the pepper
spray, in order to punish them, rather than immediately decontaminating them.   Kendrick,
Fuller, and other correctional officers at White River then "made their reports look good" by
writing incident reports that falsely justified the uses of force and contained misleading or
inaccurate accounts describing the use of force, what led to the use of force, and the immediate
aftermath of the uses of force, including the decontamination procedures.

Kendrick also punished juveniles by placing them on lockdown in their cells, known as
"special management," for more minor infractions and for longer times than warranted; taunted
juveniles in order to get them to do or threaten something that would either justify a use of force
or placement on suicide precautions, in order to punish the juveniles; and placed juveniles in
Max 1, a cell that was known to become extremely cold in the winter and hot in the summer in
order to punish them.   Kendrick also accepted juveniles into White River that other juvenile
facilities in Arkansas considered to be problems, for a "timeout," to punish them.

Specifically:

(a) On or about October 14, 2013, Peggy Kendrick assaulted E.L., a juvenile inmate, by pepper spraying E.L. in the face in order to punish her for failing to follow directions. At the time, E.L. was standing in the back corner of her cell with her arms folded, and not posing a physical threat to anyone or physically resisting in any way.

(b) On or about October 14, 2013, Kendrick falsified an incident report documenting her use of pepper spray against E.L. by falsely claiming that E.L. clenched her first and stepped toward Kendrick in an aggressive manner.

(c) Kendrick's report was false because in truth and in fact, as she knew at the time, E.L. was standing in a corner of her cell with her arms folded, and was not acting aggressively nor posing a physical threat.

(d) On or about November 13, 2013, Fuller, acting with Captain Kendrick's knowledge and permission, physically assaulted G.D., a juvenile inmate, by pepper spraying him in the face while G.D. was not posing a physical threat to anyone or physically resisting in any way.

(e) On or about November 13, 2013, Fuller and Kendrick left G.D. "to cook" in his cell after G.D. had been pepper sprayed in order to punish him.

(f) On or about November 21, 2013, Fuller, accompanied by Captain Kendrick and correctional officers A and B, and acting with Kendrick's knowledge and permission, physically assaulted G.D. by pepper spraying him in the face while G.D. was not posing a physical threat to anyone nor physically resisting in any way.

(g) On or about November 21, 2013, Fuller, Kendrick, and correctional officers A and B left G.D. "to cook" in his cell after G.D. had been pepper sprayed in order to punish him.

(h) On or about November 21, 2013, officers A and B, acting with Kendrick's knowledge and permission, physically assaulted J.H. by pepper spraying him in the face while J.H. was not posing a physical threat to anyone or physically resisting in any way.

(i) On or about November 21, 2013, Kendrick and correctional officers A and B left J.H. "to cook" in his cell after they had pepper sprayed him in order to punish him.

(j) On or about November 21, 2013, Kendrick falsified an incident report documenting correctional officer B's use of pepper spray against J.H. by falsely claiming that J.H. took an aggressive stance.

The parties understand that the Court is not bound by these stipulations.   The defendant further understands that if the Court does not accept this Plea Agreement, the defendant is not entitled to withdraw the guilty plea or otherwise be released from defendant's obligations under this Agreement and Addendum.

6.    **SENTENCING GUIDELINES:**   It is specifically understood by the defendant that the Sentencing Guidelines are not mandatory but are advisory, and that the Court is to consult them in determining the appropriate sentence. The defendant understands that the determination of the applicability of the Guidelines and of the appropriate sentence will be made by the Court.   The defendant is aware that any estimate of the probable sentencing range under the Sentencing Guidelines that the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is merely a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court.   The United States makes no promise or representation concerning what sentence the defendant will receive and the defendant cannot withdraw a guilty plea, or otherwise avoid the defendant's obligations under this Agreement and Addendum, based upon the actual sentence imposed by the Court.   The parties

understand and agree that if the guideline range is greater or less than the defendant or the United States expected it to be, and/or the sentence imposed by the Court is greater or lesser than anticipated, neither the defendant nor the United States will be allowed to withdraw, nor request withdrawal of, the guilty plea, nor be excused from any obligation under this Agreement and Addendum.

7. **ALLOCUTION:** The United States reserves the right to bring any and all facts which it believes are appropriate to the attention of the Court.

8. **COOPERATION IN THE SENTENCING PROCESS:**

A. The defendant agrees to truthfully provide all information to the Probation Office as is needed for preparation of the pre-sentence report, including, but not limited to, criminal history information. The defendant shall voluntarily provide a complete and truthful written accounting of the defendant's criminal history to the Probation Office.

B. The defendant agrees to execute all waivers necessary for the preparation of the pre-sentence report.

C. The defendant understands and acknowledges that the defendant's obligation of disclosure regarding criminal history is not limited to arrests and convictions reported in computer databases, but requires the defendant to disclose all arrests and/or convictions, including any juvenile matters, regardless of whether the defendant believes the arrest/conviction counts under the Sentencing Guidelines.

D. The defendant is required to comply with these obligations no later than the expiration of the date on which objections to the pre-sentence report are due.

9. **FINANCIAL MATTERS:**

A.    FINANCIAL STATEMENT:   The defendant agrees to fully and truthfully complete a Financial Statement provided by the United States Probation Office.

B.    FINES:   The defendant understands that unless the Court determines that the defendant is financially unable to pay a fine, the Court must impose a fine pursuant to the Sentencing Reform Act of 1984.

C.    SPECIAL PENALTY ASSESSMENT:   The defendant agrees to pay to the United States a special assessment of $100.00 per count, as required by Title 18, United States Code, Section 3013.   This special assessment is to be paid by bank cashier's check or money order as directed by the Court.   Cashier's checks or money orders should be made payable to "Clerk, United States District Court."

D.    RESTITUTION:   The parties also state that restitution is not applicable, and that there are not victims who are due restitution from the defendant.

10.    **DOUBLE JEOPARDY AND SUCCESSIVE PROSECUTION**:   The United States Attorney for the Eastern District of Arkansas will bring no further charges against the defendant for any acts or conduct arising out of the events described in the Information, which is the subject of this action, unless the defendant breaches this Agreement and Addendum.

11.    **RECORDS:**   The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12.    **CIVIL CLAIMS BY THE GOVERNMENT:**   Except to the extent otherwise expressly specified herein, this Agreement and Addendum does not bar or compromise any civil

or administrative claim pending or that may be made against the defendant, including but not limited to tax matters.

13.    **EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT AND ADDENDUM**:

A.    Defendant acknowledges and understands that if the defendant violates any term of this Agreement and Addendum, engages in any further criminal activity prior to sentencing, or fails to appear for any subsequent proceeding including sentencing, the United States shall have, in addition to all other rights and remedies otherwise available, the right to:

(1)    terminate this Agreement and Addendum; or

(2)    proceed with this Agreement and Addendum and

(a)    deny any and all benefits to which the defendant would otherwise be entitled under the terms of this Agreement and Addendum; and/or

(b)    advocate for any sentencing enhancement that may be appropriate.

B.    In the event the United States elects to terminate this Agreement and Addendum, the United States shall be released from any and all obligations hereunder.   The defendant acknowledges and understands that the agreement of the United States to dismiss any charge is conditioned upon final resolution of this matter.   If this Agreement and Addendum is terminated or if the defendant's conviction ultimately is overturned, then the United States retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this Agreement and Addendum.

C.    The defendant hereby knowingly and voluntarily waives any defense based upon the applicable statute of limitations and/or the Speedy Trial Act, for any charges

13

reinstated or otherwise filed against the defendant as a result of defendant's breach of this Agreement and Addendum, so long as the United States initiates any otherwise time barred action within one year of termination or revocation of this Agreement and Addendum.

D.      In the event that the Agreement and Addendum is terminated or if the defendant successfully moves to withdraw her plea, any statement made by the defendant in negotiation of, or in reliance on this Agreement and Addendum, including this Agreement, the stipulations in paragraph 5 of this Agreement, and the plea colloquy, but excepting statements made pursuant to any proffer agreement entered into between the parties:

(1)     may be used in the United States' case in chief and to cross examine the defendant should she testify in any subsequent proceeding; and/or

(2)     any leads derived therefrom may be used by the United States. The defendant waives any and all rights to the contrary and shall assert no claim under the United States Constitution, any statute, or any rule of procedure or evidence to the contrary, including Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f). Defendant has been advised of her rights pursuant to Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) and waives these rights.

14.     **PARTIES:**   This Agreement and Addendum is binding only upon the United States Attorney's Office for the Eastern District of Arkansas, the Civil Rights Division of the Department of Justice, and the defendant.   It does not bind any United States Attorney outside the Eastern District of Arkansas, nor does it bind any other federal, state or local prosecuting, administrative, or regulatory authority.

15.     **MISCELLANEOUS:**

14

A.      <u>MODIFICATION</u>:   No term or provision contained herein may be modified, amended or waived except by express written agreement signed by the party to be bound thereby.

B.      <u>HEADINGS AND CAPTIONS</u>:   Subject headings and captions are included herein for convenience purposes only and shall not affect the interpretation of this Agreement and Addendum.

C.      <u>WAIVER</u>:   No waiver of a breach of any term or provision of this Agreement and Addendum shall operate or be construed as a waiver of any subsequent breach or limit or restrict any other right or remedy otherwise available.   Any waiver must be expressly stated in writing signed by the party to be bound thereby.

D.      <u>RIGHTS AND REMEDIES CUMULATIVE</u>:   The rights and remedies of the United States expressed herein upon any breach hereunder by the defendant are cumulative and not exclusive of any rights and remedies otherwise available to the United States in the event of any breach of this Agreement and Addendum by defendant.

E.      <u>JOINT NEGOTIATION</u>:   This Agreement and Addendum has been mutually negotiated by the parties hereto, and any uncertainty or ambiguity existing herein shall not be interpreted against any party by reason of its drafting of this Agreement and Addendum, but instead shall be interpreted according to the application of the general rules of interpretation for arms length agreements.

16.    **<u>NO OTHER TERMS</u>:**   This document and the Addendum completely reflect all promises, agreements and conditions made between the parties, constitute the entire agreement between the parties and supersedes any and all prior agreements or understandings between the parties, oral or written, with respect to the subject matter hereof.

17.    **<u>APPROVALS AND SIGNATURES</u>**:

A.    <u>DEFENDANT</u>:   The defendant has read this Agreement and Addendum and carefully reviewed every part of it with her attorney.   The defendant understands and voluntarily agrees to the terms and condition of this Agreement and Addendum.   Further, the defendant has consulted with   her attorney and fully understands her rights with respect to the provisions of the United States Sentencing Guidelines which may apply to this case.   No other promises or inducements have been made to the defendant, other than those expressly contained in this Agreement and Addendum.   In addition, no one has threatened or forced the defendant in any way to enter into this Agreement and Addendum.   Defendant further acknowledges that defendant has entered into this Agreement and Addendum, consciously and deliberately, by defendant's free choice, and without duress, undue influence or otherwise being forced or compelled to do so, and this Agreement and Addendum constitutes the legal, valid and binding obligation of the defendant, fully enforceable against defendant in accordance with its terms. Finally, the defendant is satisfied with the representation of her attorney in this case.

[SIGNATURES CONTINUED ON NEXT PAGE]

B.      DEFENSE COUNSEL:   Defense counsel acknowledges that she is the

attorney for the defendant, and that she has fully and carefully discussed every part of this

Agreement and Addendum with the defendant.   Further, defense counsel has fully and carefully

advised the defendant of the defendant's rights, of possible defenses, and of the consequences of

entering into this Agreement and Addendum, including the possible consequences of not

complying with this Agreement and Addendum.   To counsel's knowledge, the defendant's

decision to enter into this Agreement and Addendum is an informed and voluntary decision.

DATED this _____26_____ day of ____april_____, 2017.


                        PATRICK C. HARRIS
                        Acting United States Attorney


                        By JULIE PETERS
                        Assistant United States Attorney
                        AR Bar No. 2000109
                        Post Office Box 1229
                        Little Rock, Arkansas 72203
                        (501) 340-2600
                        julie.peters@usdoj.gov


                        THOMAS WHEELER
                        ACTING ASSISTANT
                        ATTORNEY GENERAL
                        United States Department of Justice
                        Civil Rights Division


                        By: SAMANTHA TREPEL
                        DC Bar No. 992377
                        Trial Attorney
                        U.S. DOJ – Civil Rights Division
                        950 Pennsylvania Ave. NW
                        Washington, DC   20530
                        202-514-3204
                        samantha.trepel@usdoj.gov

                                17

PEGGY KENDRICK
Defendant

SONIA FONTICIELLA RIOS
Attorney for Defendant

18